UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA, ex rel.               CIVIL ACTION
MEREDITH MONOHAN DEANE,

VERSUS                                            NO.  10-2085

DYNASPLINT SYSTEMS, INC. and               SECTION  "N"  (3)
GEORGE HEPBURN

## ORDER AND REASONS

Presently before the Court is the Government's Motion for Partial Summary Judgment (Rec. Doc. 80) and Defendants' Cross-Motion for Partial Summary Judgment (Rec. Doc.82).  For the reasons stated herein,

**IT IS ORDERED** that the Government's Motion (Rec. Doc. 80) and Defendants' Motion (Rec. Doc. 82) are hereby **GRANTED IN PART** and **DENIED IN PART** in that the Court finds that certification does, in fact, implicate the durable medical equipment ("DME") prohibition contained in 42 U.S.C. § 1395x(n); however, the presumption that a facility is "primarily engaged" in providing the statutorily required level of care is rebuttable.

### I. Background

Defendants, Dynasplint Systems, Inc. ("Dynasplint") and its president, George Hepburn ("Hepburn"), supply DME, specifically the product called the Dynasplint System ("the Splint"), to persons participating in Medicare.  (Rec. Doc. 80-3).  Meredith Deane, a former employee at Dynasplint, filed this *qui tam* action in July of 2010 alleging, *inter alia*, claims that Dynasplint had

1

a policy of submitting claims for payment for Splints provided to beneficiaries covered under Medicare Part A and then billing Part B for payment.  (Rec. Doc. 1).  The claims allege violations of the False Claims Act and its state law equivalents.  (*Id.*).  The United States Government joined the suit and filed a complaint in intervention alleging violations of the False Claims Act as well. (Rec. Doc. 20).

A person is liable under the False Claims Act who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval ...; [or]
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government ...
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person....

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997) (citing 31 U.S.C. § 3729(a)).  "[C]laims for services rendered in violation of a statute do not necessarily constitute false or fraudulent claims under the FCA."  *Id.*  Where legitimate grounds for disagreement over the scope of regulatory provision exists, a person cannot be held to have knowingly presented a false claim.  *United States v. Southland Management Corp.*, 326 F.3d 669, 684 (5th Cir. 2003) (citing *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d. 1013, 1018 (7th Cir. 1999) (declaring "imprecise statements or differences in interpretation growing out of a disputed legal question are similarly not false under the FCA.")).

The Government and Dynasplint each filed motions for partial summary judgment on the issue of whether Medicare-certified SNFs are categorically ineligible for Part B DME coverage under the applicable law.  (Rec. Doc 80-3 at p. 1; Rec. Doc. 82-1 at p. 7).

## II. Law & Analysis

### A. Legal Principles

#### 1. Summary Judgment

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See* Fed. R. Civ. P. 56(c);  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986);  *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990).  Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553;  *see also Matsushita Elec. Indus. Co., Ltd. v.*

3

*Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *See* Fed. R. Civ. P. 56(c)(3) ("court need consider only the cited materials"); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

**B. Application of the Legal Principles**

**1. Pending Cross-Motions for Summary Judgment**

The Medicare program is split into distinct parts and is administered by the Centers for Medicare & Medicaid Services ("CMS").  Medicare Part A covers eligible beneficiaries requiring inpatient medical care at a per diem rate, which is calculated to cover all patient-related costs, paid to the providing facility.  42 U.S.C. § 1395d.  Medicare Part B, which covers medical and other health services, provides payment for the rental or purchase of DME only if the equipment is used in the patient's "home" or in "an institution used as [the] home."  42 U.S.C. § 1395x(n).  Medicaid, on the other hand, covers custodial care.  (Rec. Doc. 82-1 at p. 3 (citing 42 C.F.R. § 411.15(g)).  Therefore, Medicare Part A pays the institution for the expense of DME supplied to a beneficiary when such a service is provided for use in a hospital or skilled nursing facility ("SNF") as defined in the applicable statutes, and Medicare Part B pays the supplier directly when a product is provided to a beneficiary for use in the "home" or institution that the beneficiary uses as the home.  Pursuant to Section 1395x(n), "home" includes "an institution used as his home other than an institution that meets the requirements of subsection (e)(1) of this section or section 1395i-3(a)(1) of this title."  *See* 42 C.F.R. § 410.38 ("[a]n institution that is used as a home may not be a hospital, or a CAH [critical access hospital] or a SNF defined in sections 1861(e)(1), 1861(mm)(1), 1819(a)(1) [i.e. § 1395i-3(a)(1)] of the Act, respectively.").  Section 1395i-3(a) defines a SNF as an institution (or distinct part of an institution) which–

> (1) is primarily engaged in providing residents–
>> (A) skilled nursing care and related services for residents who require medical or nursing care, or

(B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons, and is not primarily for the care and treatment of mental diseases

(2) has in effect a transfer agreement (meeting the requirements of section 1395x(l) of this title) with one or more hospitals having agreements in effect under section 1395cc of this title; and

(3) meets the requirements for a skilled nursing facility described in subsections (b), (c), and (d) of this section.

§ 1395i-3(a)(1)-(3).  To receive payment, suppliers of DME, including Dynasplint, must submit claims based on the place of service where the beneficiary will be using the device.  Accordingly, Part B pays the supplier directly, and payment is only proper for DME supplied for use in the home, or institution used as the home, other than an institution as defined in (e)(1) of this section or § 1395i-3(a)(1).

The sole issue raised in the Government's motion is whether a provider of DME is categorically prohibited from submitting claims for DME supplied to Medicare beneficiaries that reside in *Medicare-certified* SNFs. In its motion, the Government contends that Congress has expressly prohibited Part B coverage of DME for use in SNFs.  (Rec. Doc. 80-3 at p. 8).  In particular, the Government avers that Congress expressly delegated to the Secretary of Health and Human Services ("HHS"), and HHS subsequently delegated to CMS, the authority to determine and certify a facility as a SNF.  Therefore, the Government argues, Congress has clearly and expressly declared that certification as an SNF by HHS or CMS is singularly sufficient to trigger the Part B DME payment proscription found in Section 1395x(n).  (Rec. Doc. 80-3 at p. 9 (citing 42 U.S.C. § 1395aa(a))).  Accordingly, the Government suggests, the claims at issue in this case, submitted by Dynasplint to Part B for DME furnished to beneficiaries in *Medicare-certified* SNFs, are categorically false.  The Government also asserts that, even if the statutes governing DME and Part

6

B payment were ambiguous, HHS and CMS's interpretation[1] of those statutes, i.e. that certification as a Medicare-participating SNF is sufficient to trigger a proscription of DME payment, is entitled to *Chevron*[2] deference.  (*Id.* at p. 10).

In their response in opposition, Defendants counter with the assertion that certification is not the bright-line standard for the Part B prohibition for DME provided for use in SNFs.  Defendants offer that the statutory exclusion found in § 1395x(n) only contemplates the definition contained in § 1395i-3(a)(1): "an institution that is primarily engaged in providing...(A) skilled nursing care...or (B) rehabilitation services...," while the standards for certification found in Section 1395i-3(b)-(d) *expressly* exclude 1395i-3(a)(1) from consideration during the certification process.  (Rec. Doc. 98 at p.10).  Thus, Defendants propose, whether or not an institution is "primarily engaged" in providing skilled nursing or rehabilitative care is unascertainable from its certification status.  (*Id.* at p. 11).  In other words, Defendants argue that the Government's interpretation and reliance solely on certification fails and summary judgment must be denied.  In addition, Defendants contend, the Court must engage in a case-by-case analysis to determine if the Medicare-certified SNF was actually "primarily engaged" in providing skilled nursing or rehabilitative care for the Court to find that the claim was false or fraudulent for purposes of liability and treble damages under the False Claims Act.  (*Id.* at p. 1, 16).

Consistent with its opposition, Dynasplint argues in its cross-motion that the claims are not false simply because a facility is *Medicare-certified* as a SNF.  Defendants suggest that certification,

---

[1] The Government cites excerpts from Medicare Claims Processing Manual, Medicare websites, Medicare Benefits Policy Manual, State Operations Manual, and others to support its interpretation of the statutes at issue.

[2] *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc., et al.*, 467 U.S. 837 (1984).

alone, is insufficient to raise the statutory proscription found in § 1395x(n).   Specifically, Defendants contend that § 1395i-3(a)(1) requires the institution to be "primarily engaged in providing skilled nursing care," and, therefore, such a provision means that the facility must provide skilled nursing or rehabilitative care to, at least, a majority of its patients.  (Rec. Doc. 82-1 at p. 16).  Defendants further assert that the definition of a SNF is not based on the types of services that a facility is capable of providing, but the services the facility "actually provides."  (*Id.*).  Additionally, Defendants claim that the regulation pertaining to Part B coverage of DME that prohibits hospitals, critical access hospitals ("CAH"), and SNFs from serving as a beneficiary's "home" distinguishes between substantive definitions and definitions that pertain to certification.   In support of this contention, Defendants point to the definition of a "CAH," which states, "[t]he term 'critical access hospital' means a facility *certified* by the Secretary as a critical access hospital under section 1820(e)." (*Id.* at p. 16 (internal citations omitted) (emphasis added)).  In particular, Defendants contend that, had Congress intended certification to be the final word on whether DME payments were prohibited, it would have likewise based the proscription on certification and not the type of care that the facility was "primarily engaged" in providing. (Rec. Doc. 82-1 at p. 23).

## 2. Certification Is Sufficient

In sum, the Government claims that Congress expressly delegated the authority to certify an institution as a SNF to the Secretary, and, therefore, certification by the Secretary and/or its delegate is sufficient to bar payment under Part B for DME provided to beneficiaries living in a certified SNF.  Defendants aver that the Government's certification-based theory, as the sole grounds for asserting the DME prohibition, contradicts the statute as written and, therefore, must fail.  Accordingly, to decide this issue, this Court must determine the following: (1) what authority did

Congress delegate with regard to the certification of SNFs, (2) what facilities are included in the statute's prohibition against payment for DME furnished in certain types of institutions, and (3) whether certification alone as a SNF is sufficient to mandate application of 1395x(n)'s prohibition.

The Government is correct that Section 1395aa(a) explicitly delegates to HSS the authority to make an agreement with any State for purposes of utilizing that State's health or other appropriate agency to determine whether an institution is a hospital or skilled nursing facility.  Moreover, HHS has delegated the authority to determine Medicare participation of state-certified facilities to CMS. (Rec. Doc. 80-3 at p. 4).  Put simply, in practice, the state agency certifies a provider, and CMS may or may not approve of the provider as a Medicare participating entity. (*Id.* at p. 5).  Therefore, a critical question for this Court is: what authority, exactly, has Congress delegated to HHS with regard to certification of Medicare-participating providers.

Section 1395i-3(g) provides some guidance.  In that provision, Congress declared, "[p]ursuant to an agreement under § 1395aa of this title, each State shall be responsible for certifying, in accordance with surveys conducted under paragraph (2), the compliance of skilled nursing facilities... with the requirements of subsections (b), (c), and (d) of this section [i.e. 1395i-3(b)-(d)]." 42 U.S.C. § 13951-3(g)(1)(A).  Nothing in that subsection or paragraph (2) requires the State, HHS, or CMS to certify a provider based on status as "primarily engaged in providing to residents (A) skilled nursing care... or (B) rehabilitative services..." as required under Section 1395i-3(a)(1). Consequently, without more, the statute does not grant the authority, nor does it require HHS, to certify, for purposes of Medicare participation, a provider based on the level of care the provider or institution is "primarily engaged" in furnishing to its patients.

For additional support, the Government avers that CMS has promulgated Federal Regulations to demonstrate that its interpretation is correct, citing Sections 488.10(a)(1), 488.300, 483.1(a)(1), and 483.5(a) of Title 42 of the Code of Federal Regulations.  However, the Court is particularly persuaded by the language of 42 C.F.R.§ 483.5(a), which states: "Facility Defined. For Purposes of this subpart, facility means a skill nursing facility (SNF) that meets the requirements of sections 1819(a), (b), (c), and (d) of the Act...."  Specifically, § 483.5(a) directly implicates the definition of a SNF contained in § 1395i-3(a), and more importantly § 1395i-3(a)(1), in the certification process.  Therefore, reading together all of the pertinent C.F.R. provisions, statutes, and, so far as they have the power to persuade, HHS and CMS's interpretations (*see* fn. 1) of the statutes, the Court finds that certification necessarily applies whether a  facility was "primarily engaged" in providing to residents the types of care detailed in subsections (1) and (2) of the § 1395i-3(a).

Contrary to Defendants' assertions, this Court does not read § 1395i-3(g) as imposing a limit, by not including § 1395i-3(a), that would bar consideration of whether the facility is "primarily engaged" in providing skilled nursing or rehabilitative care in the certification process.  Neither does the Court find that 42 C.F.R. § 483.5 conflicts with the statute as written.  In addition, the Court is not persuaded by Defendants' argument under *St. Elizabeth's Med. Ctr. of Boston, Inc. v. Thompson*, 396 F.3d 1228 (D.C. Cir. 2005) contained in their Cross-Motion for Summary Judgment (Rec. Doc. 82-1 at p. 16) in support of its quantitative argument concerning the interpretation of "primarily engaged."  To the contrary, a closer reading of that case indicates that the opinion directly contradicts Defendants' arguments in its opposition to the Government's motion.  In that case, the court declared, "a facility must be primarily engaged in providing skilled nursing or rehabilitative care to *qualify* as a SNF...."  *Id.* at 1234 (emphasis added).  Accordingly, the Court finds that the

10

DME prohibition, which clearly and explicitly excludes coverage for beneficiaries residing in institutions meeting the definitions of, *inter alia*, §1395i-3(a)(1), is implicated through the certification process.   Therefore, the Court finds that certification is sufficient to trigger the DME proscription contained in § 1395x(n).  However, this is not the end of the inquiry.

### 3. The Presumption

Defendants properly point out that certification merely requires that a facility be in "substantial compliance" to participate in Medicare as a SNF.  (Rec. Doc. 98 at p. 11 (Defendants incorrectly cite 42 C.F.R. § 488.330(b)(1) as "42 U.S.C. § 488.330(b)(1)").   Moreover, § 488.330(b)(2), the provision regarding noncompliant facilities, does not require *automatic* termination of a facility's Medicare or Medicaid provider agreement if that facility does not meet the certification standards.   Thus, a facility may, in fact, be noncompliant with any of the certification standards, including the requirement that the facility be "primarily engaged" in providing skilled nursing or rehabilitative care, and still participate in Medicare or Medicaid as a *certified* SNF.  Furthermore, a facility may  be "primarily engaged" as required by the statute and regulations at the time it is certified, and fall below a level of care constituting "primarily engaged" thereafter.  Certification of a facility as compliant cannot be, and is not, permanent.  Thus, the Court finds that certification does not stand as an irrebuttable conclusion that a facility is "primarily engaged" in providing skilled nursing or rehabilitative care.  In further support of its conclusion, the Court agrees with Defendants' contention that had Congress wanted to prohibit payment for DME submitted for patients residing in Medicare-certified SNFs and not those facilities that are actually "primarily engaged" in providing the requisite care Congress would have simply based the prohibition purely on certification.  However, Congress did not.  Congress specifically chose to

prohibit DME payments based on the facilities that were "primarily engaged" in providing certain types of care.  As a result, Defendants must be able to present contradictory evidence to show that a particular facility is no longer "primarily engaged" in providing the requisite level of care for this Court to impose False Claims Act liability.

Finally, the Court recognizes Defendants' suggestion that a facility must provide skilled nursing or rehabilitative care to, at least, fifty-percent (50%) of its patients to implicate the DME prohibition.  At this time, the Court is not convinced that it must decide the precise definition and/or percentage of care required to be "primarily engaged," especially without application to the facts of this case, to make a complete ruling as to the two motions before the Court.

**III. Conclusion**

For the reasons stated above, **IT IS ORDERED** that the Government's Motion for Partial Summary Judgment (Rec. Doc. 80) and Defendants' Motion for Partial Summary Judgment (Rec. Doc. 82) are both **GRANTED IN PART** and **DENIED IN PART** as stated herein.

New Orleans, Louisiana, this 24th day of February 2015.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**

12