UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MEREDITH MONAHAN DEANE                    CIVIL ACTION

VERSUS                                    NO. 10-2085

DYNASPLINT SYSTEMS, INC. ET AL.           SECTION "N" (2)

## ORDER AND REASONS ON MOTION

This is an action under the federal False Claims Act, 31 U.S.C. §§ 3729 et seq., in which the United States has intervened as prosecuting plaintiff.  Record Doc. No. 20. The government seeks to recover millions of dollars from defendants Dynasplint Systems, Inc. and its principal, George Hepburn, alleging thousands of improperly submitted claims for reimbursement under the Medicare program.  When the penalties and trebled damages sought by the government, id. at pp. 19-20, are considered, a money judgment against defendants could exceed $200 million.

The case involves an arcane and complex federal regulatory scheme and substantial volumes of medical, financial and reporting data, all cloaked in obscure acronyms and technical terminology.  Understandable and complete expert opinion and analysis will be vital to evaluation of both the government's claims and the defenses, and both sides have retained experts to testify in the case.

Defendant Dynasplint's Motion to Compel, Record Doc. No. 134, is currently pending before me.  Six specific forms of relief are requested.  Record Doc. No. 134

at p. 3.  The United States filed a timely written opposition.  Record Doc. No. 140.  Oral

argument was conducted on April 8, 2015.  At the request of counsel for the United

States, the parties were given one final opportunity to determine if they could resolve

their dispute over defendant's Request for Production No. 14 through an expert-to-expert

discussion concerning whether material publicly available on a government website was

sufficient to satisfy defendant's request, without further production from the government.

That effort was unsuccessful.  Record Doc. No. 145.

Having considered the record, the oral argument of counsel, their written

submissions and the applicable law, **IT IS ORDERED** that defendant's motion is

GRANTED IN PART AND DENIED IN PART as follows.

The motion is denied insofar as it seeks an order that the government has waived

all objections to defendant's Request for Production No. 14, except the prematurity

objection specifically asserted in the government's written response to that request.

Defendant is correct that failure to assert specific written objections to requests for

production within the time period established by Fed. R. Civ. P. 34(b) generally results

in waiver of objections to the requests.  See Poulos v. Naas Foods, Inc., 959 F.2d 69, 74

(7th Cir. 1992) (party "waived any objection to production by failing to object when

disclosure was due"); Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 10, 12-13 (1st

Cir. 1991) (objections to requests for production were waived by failure to make timely

objections); <u>McLeod, Alexander, Powell & Apffel v. Quarles</u>, 894 F.2d 1482, 1484 (5th Cir. 1990) (vague objections lacking in specificity held invalid); <u>In re United States</u>, 864 F.2d 1153, 1156 (5th Cir. 1989) ("[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."); <u>accord</u> <u>Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.</u>, 236 F.R.D. 396, 398 (N.D. Ill. 2006); <u>Brown-Stahlman v. Charter Trust Co.</u>, 2006 WL 680874, at *1 (D.N.H. Mar. 16, 2006); <u>Banks v. Office of Senate Sgt.-at-Arms</u>, 222 F.R.D. 7, 21 (D.D.C. 2004).

However, the court retains discretion to decline to compel production of requested documents when the request far exceeds the bounds of fair discovery, even if a timely objection has not been made.  <u>Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.</u>, 2007 WL 1726558, at *4 (D. Nev. June 11, 2007); <u>Lucero v. Martinez</u>, 2006 WL 1304945, at *2 (D.N.M. Mar. 11, 2006); <u>Kolenc v. Bellizzi</u>, 1999 WL 92604, at *3 (S.D.N.Y. Feb. 22, 1999).

In this instance, I find that the government's previously unasserted objections concerning undue burden, expense and alternative source availability should at least be considered and not deemed waived.  The production requested by defendant is indeed voluminous.  Making the production will undoubtedly require much time, effort and expense incurred by the government.  I cannot conclude that the government's late

assertion of these objections has been made in bad faith or with dilatory intent. For all of these reasons, I exercise the court's discretion to find that these objections have not been waived.

On the other hand, I also find that the government's late objections to Request No. 14, together with the prematurity objection it timely asserted, should not prevail and must be overruled. Accordingly, the motion is granted insofar as it seeks an order compelling the government to produce all 17,000 plus individual Medicare cost reports of the 7,040 skilled nursing facilities ("SNF") at issue in this litigation in response to defendant's Request for Production No. 14.

The expert analysis cited by the government as the basis for its prematurity objection has now been completed. Thus, the basis for that objection no longer exists, and it is overruled. It is undisputed that the requested Medicare cost reports are relevant to the parties' claims and defenses and discoverable under Fed. R. Civ. P. 26(b)(1). In support of its motion, Dynasplint has submitted the affidavit of its expert, Scott Steiner. Record Doc. No. 134-4. Steiner states that the website information to which the government seeks to confine this discovery contains only "data elements" and that "[c]omplete SNF Medicare cost reports contain significantly greater amounts of data . . . ." Id. at ¶ 12, p. 6 (emphasis added). He concludes that the complete data in the

full cost reports, which "are not publicly available," are "required to perform" his expert analysis in support of the defense position.  Id. at ¶'s 14-15, pp. 6-7.

The legal source of the government's burden, expense and alternative source objections is Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii), which provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that:
> (i)  the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . .; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Defendant is correct that the government failed to assert the undue burden and expense and alternative source objections it now makes in opposition to this motion in its Rule 34 written response.  In fact, contrary to the government's current position, its written response to Request No. 14 contains the clear statement that "upon entry of an appropriate protective order [which has already occurred, Record Doc. No. 121], the United States will produce the cost reports of the skilled nursing facilities in which beneficiaries were located at the time of service for the false claims at issue."  Record Doc. No. 134-2 at p. 26 (emphasis added).  The government now seeks to back away from its prior response by submitting three affidavits, including those of two purported experts.

I conclude that these affidavits are <u>not</u> sufficient to establish that the government's objections should be sustained.  Specifically, I cannot credit the conclusions by two of the declarants that the full Medicare cost reports need not be produced for the following reasons.

The affidavit of Steven Holubowicz, Record Doc. No. 140-9, is noteworthy for its obscurity.  It seems to conclude that the source to which the government seeks to restrict defendant's analysis is a mere "extract" of Medicare costs reports and not the full reporting of data defendant seeks.  <u>Id.</u> at ¶ 4, p. 2.   The language used throughout Holubowicz's declaration is so arcane[1] as to defy lay understanding and undermine his conclusion that "[n]o specialized expertise is required to utilize HCRIS data, . . ." <u>Id.</u> at p. 2, ¶ 7.

Declarant Ian Dew is an expert witness retained by the government to provide an expert's report, and presumably testimony, in support of its case. His affidavit and attached resume lead me principally to two conclusions: (1) He is a frequent advocate for false claims plaintiffs, including the government,[2] whose objectivity in terms of what

---

[1]<u>See, e.g.,</u>: "HCRIS data is in the form of a <u>comma separated variable files</u> with CSV extensions which MS Excel can <u>potentially</u> open. They are <u>essentially</u> raw data files that represent a running stream of data and data fields." Record Doc. No. 140-9 at ¶ 6, p. 2 (emphasis added).

[2]Dew's resume reflects that he has been "[l]ead data analyst in over 60 healthcare and other fraud investigations for US DOJ Civil Division, State Offices of Attorneys General, and private clients," including "Testifying Engagements" in six cited cases for plaintiffs only. Record Doc. No. 140-11 at pp. 5 and 7.

data might best serve the purposes of the defense is subject to question. (2) As in almost all civil cases, the paid expert of one side will disagree in his opinions with the paid expert of the other side.  Dew's declaration provides no persuasive reason why his opinion concerning what underlying data or evaluation ought to be sufficient to support the calculations of his opposing expert should be accepted as fact controlling the scope of discovery and the expert opinion formulation and disclosure process governed by the Federal Rules of Civil Procedure, not Dew's opinion.

The declaration of Linda Uzzle is self-serving, vague and equivocal in its statement that production of the requested reports "will be very time intensive and many contractors will likely request additional funding since a request of this size falls outside the normal scope of work" and "could take approximately nine to twelve months and will involve utilizing the services of multiple contractors."  Record Doc. No. 140-10 at p. 2 (emphasis added).  "The normal scope of work," which Ms. Uzzle's declaration relies upon as the benchmark for her estimate of the time required for this production, is inappropriate for this litigation, which the government itself has framed in broad-sweeping terms of 7,040 SNF providers involving 17,000 Medicare cost reports.  She offers no explanation why the government could not dedicate more of its considerable resources to assign as many people as might be necessary to busy themselves beyond

"the normal scope of work" to complete more quickly and efficiently the task the government has itself necessitated by the breadth and nature of its claims in this case.

Weighing the factors included in Rule 26(b)(2)(C)(i) and (iii) militates strongly against the government's objections and in favor of a finding that the likely benefit of this discovery to the defense outweighs its burden or expense to the government. The government itself has placed this large volume of information at issue by the wide scope of allegedly false claims for which it seeks to recover. The same information in the same amount of detail cannot be obtained from the alternative source proposed by the government. The government's expert cannot be permitted to dictate to the defendant's expert what data is needed to perform the defendant's expert's separate and independent analysis. The needs of the case are large. The amount in controversy is enormous. The government's resources far outweigh defendant's resources. At stake is the very business existence of the defendant company and the continued participation in its affairs of its individual principal, both of whom must be given a fair opportunity to defend themselves against the government's accusations. The expert analysis that this discovery will support is crucial to resolving the key issues in this case. Given these high stakes, with the government having framed its own claims so broadly and voluminously, the government cannot be permitted to restrict defendant from receiving the information its expert believes is necessary to mount an adequate defense.

The motion is denied insofar as it seeks an order requiring the government to produce the requested "CMS Query" results immediately. The government's rolling production of these materials has been adequate to date and will continue to be so, as long as it completes this production by the deadline set below.

The motion is granted insofar as it seeks clarification concerning the government's interpretation of the word "you" as used in defendant's requests for production. Generally, in cases conducted principally by attorneys of the United States Justice Department, government possession, custody, or control extends to materials in the possession of a federal agency other than the Justice Department when the Justice Department is engaged in a joint effort with that other agency or when the other agency is so closely aligned with the Justice Department as to be part of the prosecuting government team or has contributed significantly to the investigation or prosecution of the case. United States v. Villa, 2014 WL 280400, at *3 (D. Conn. Jan. 24, 2014) (citing United States v. Gupta, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012); United States v. Finnerty, 411 F. Supp. 2d 428, 432 (S.D.N.Y. 2006)); United States v. Libby, 429 F. Supp. 2d 1, 6 (D.D.C. 2006) (citing United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992); United States v. Fairman, 769 F.2d 386, 391 (7th Cir. 1985)); Finnerty, 411 F. Supp. 2d at 432 (citing United States v. Chalmers, 410 F. Supp. 2d 278, 290 (S.D.N.Y. 2006); United States v. Holihan, 236 F. Supp. 2d 255, 260 (W.D.N.Y. 2002); United States v. Volpe, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999); United States v. Upton, 856 F. Supp. 727, 749-50

(E.D.N.Y. 1994)); <u>United States v. Giffen</u>, 379 F. Supp. 2d 337, 342-43 (S.D.N.Y. 2004)

(citing <u>United States v. Trevino</u>, 556 F.2d 1265, 1272 (5th Cir. 1977)).  However, "'the

scope of the government's obligation to produce documents . . . turn[s] on the extent to

which the prosecutor has knowledge of and access to the documents.'" <u>Libby</u>, 429 F.

Supp. 2d at 6 (quoting <u>United States v. Santiago</u>, 46 F.3d 885, 894 (9th Cir. 1995))

(internal quotation omitted); <u>see also</u> <u>Trevino</u>, 556 F.2d at 1272 (government attorneys

are not "allowed to avoid disclosure of evidence by the simple expedient of leaving

relevant evidence to repose in the hands of another agency while utilizing his access to

it in preparing his case for trial.").

Accordingly, **IT IS ORDERED** that in this instance, the term "you" must be

interpreted as the government itself has reasonably defined it in its own Rule 34 written

response: "[T]hose persons and components of the United States Department of Justice

Civil Division and the United States Attorney's Office for the Eastern District of Louisiana

that have or had responsibility for this action or the investigation leading thereto, and those

components of the United States Department of Health and Human Services (HHS) and the

Centers for Medicare & Medicaid Services (CMS) that have or had responsibility for the

administration or oversight of the Medicare program that is the subject of the United States'

complaint." Record Doc. No. 134-2 at p. 3.

The motion is also granted insofar as it seeks an order requiring the government

to comply with the requirement of Fed. R. Civ. P. 26(b)(5) to provide a privilege log

identifying all materials it is withholding from production on grounds of privilege or work product. No legitimate basis for excusing the government from this requirement has been established in the government's written submissions or for the reasons proffered during oral argument. Lawyers and clients sometimes communicate in ways that are neither confidential nor for purposes of giving or obtaining legal advice. Thus, I am unwilling to assume that <u>every</u> communication between a government lawyer and personnel of other agencies fits the more restrictive definition of what constitutes <u>privileged</u> communication or work product materials.

The motion is denied insofar as it seeks an award of attorneys fees and costs incurred in connection with this motion. The motion has been granted in part and denied in part, and the government's objections – though unsuccessful – were at least arguably asserted in good faith. Under these circumstances, I find that a reasonable apportionment of the parties' expenses in connection with this motion is that each should bear its own. Fed. R. Civ. P. 37(a)(5)(C).

In an effort to fit this production into the existing schedule previously established by the presiding district judge, Record Doc. No. 139, **IT IS ORDERED** that all materials required to be produced by this order, including the CMS Query results and all of the full Medicare cost reports responsive to Request No. 14, together with the required privilege log, must be provided by the government to defendant no later than **May 15,**

**2015**.  In light of the broad scope of this litigation, as framed by the government itself, the government must commit all resources necessary to comply with this order in a timely fashion, over and above the "normal scope of work" of some of its agencies and contractors.  In the alternative, the parties may request from the presiding district judge an extension of the deadlines in this order, together with those previously set by him, including the deadline for <u>defendant</u> to submit its expert reports using the produced materials, if they find it necessary to do so.

New Orleans, Louisiana, this ____13th____ day of April, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

**CLERK TO NOTIFY:**
**HON. KURT D. ENGELHARDT**

-12-